In the Matter of the COMMISSION OF INVESTIGATION OF THE STATE OF NEW YORK, Respondent, against CARMINE LOMBARDOZZI, Appellant.

First Department, October 20, 1959.

*Maurice N. Nessen* of counsel (*Arthur B. Kramer* with him on the brief; *Franken, Kramer, Bam & Nessen,* attorneys), for appellant.

*Peter J. McQuillan* of counsel (*Nathan Skolnik* with him on the brief; *Eliot H. Lumbard,* attorney), for respondent.

*Per Curiam.* This is another proceeding arising out of the so-called " Apalachin Conference ", which took place at the home of one Joseph Barbara in up-State New York in November, 1957. The State Commission of Investigation questioned some of those who had attended the gathering, and upon invocation of the claim of constitutional privilege extended to them a grant of immunity. Upon their continued refusal to answer, the Commission applied to the Supreme Court for warrants of commitment, and the allegedly recalcitrant witnesses were committed to civil jail on August 22, 1958, until such time as they would respond to the questions asked. On appeal by this respondent and others, the propriety and legality of such commitment were upheld (*Matter of Commission of Investigation* v. *Lombardozzi,* 7 A D 2d 48, affd. 5 N Y 2d 1026). Thereafter two of the recalcitrant witnesses requested and were given a further opportunity to answer the questions. The applicable standards for determining whether the purported answers constituted compliance with the orders of the court were considered at length against the factual background of the case by this court and the Court of Appeals in *People ex rel. Valenti* v. *McCloskey* (8 A D 2d 74, affd. 6 N Y 2d 390). As a result, one of the witnesses was released while the other remained in custody.

Appellant Carmine Lombardozzi, after one year of imprisonment, also requested and was granted a further opportunity to reply to the 26 questions on which he had previously maintained silence. After he was questioned, he applied for release

at Special Term on the ground that he had now answered all the questions put to him, and he now appeals from the denial of that application.

In response to the 26 questions specified in the order of commitment and the supplementary questions designed to explore the further answers given to the specified questions, appellant admitted his presence at Apalachin and identified some of the people who were present; but he denied repeatedly that there was any meeting ·or that anything was discussed other than exchanges of general greetings and small talk. His story in substance was that he did not know Barbara; that he had met a friend at a wake who invited him to go to a party in Binghamton the next day; that he accepted and went along in the company of others; that he left his family and business without packing any luggage and without any idea of how far he was going or how long he would be away; that he was on the Barbara premises for about six hours; that he saw some 40 other people on the premises, recognized some, had some general conversation, ate, drank and played pinochle. Later he heard there were State Troopers in the vicinity but he was not concerned and did not leave the premises until some time later, when his friend had ascertained that Barbara, who had reportedly suffered a heart attack, was all right. He drove back in the car of another acquaintance whom he knew had been convicted recently in a narcotics conspiracy case but who was returning to Brooklyn, where respondent-appellant lived. His initial testimony that he could not remember the subject of his discussions or whether crime was discussed was followed by his flat denials that there had been any discussion of crime at any time.

Such a narrative must be viewed with considerable skepticism. It may be difficult to accept this innocuous and nonincriminating testimony as the true story, in the light of the fact that Lombardozzi chose to remain in prison for a year rather than divulge it. Still, it cannot be said that it is so improbable and wholly incredible on its face as to constitute no answer at all — a palpable evasion. The answers of appellant may in fact be a tissue of fictions, half-truths and evasions designed to obscure the truth, but in summary contempt proceedings, as stated in *People ex rel. Valenti* v. *McCloskey* (8 A D 2d 74, 84, *supra*), if the answer given by witnesses were " only false answers, even incredible ones — but short of palpably and obstructively evasive ones — they have satisfied the statute and the orders under which they were committed, and they must be released. For if there is any issue of credibility then it is one which can only be

resolved in a criminal prosecution for perjury or for the crime of contempt, and not in a summary proceeding.''

Improbable as appellant's story may in many respects seem, without resort to extrinsic evidence and matters dehors the record it has not been established that the answers to the questions given are so preposterous as to offer not the slightest probability of truthfulness. It follows, therefore, that the order of Special Term denying the application of respondent-appellant for discharge from custody should be reversed, on the law and the facts, and the application granted, without costs.

BOTEIN, P. J., BREITEL, RABIN, M. M. FRANK and McNALLY, JJ., concur.

Order denying application of respondent-appellant for discharge from custody unanimously reversed, on the law and on the facts, and the application granted, without costs.

Settle order.